*HHW*

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
6-3-2008
JUN - 3 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. CONTRELL PLUMMER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 08 C 1885 |
| | ) | |
| DONALD HULICK, Warden,<br>Menard Correctional Center, | ) | |
| | ) | The Honorable |
| | ) | Joan H. Lefkow, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the attached Exhibits to respondent's Answer to the above-captioned Petition for Writ of Habeas Corpus are hereby filed with this Court:

Exhibit A:   Rule 23 Order, *People v. Plummer*, Nos. 1-01-1140 & 1-01-2471, cons. (Ill.App. 2004);

Exhibit B:   Order, *People v. Plummer*, No. 98378 (Ill. 2004);

Exhibit C:   Postconviction petition, *People v. Plummer*, No. 99 CR 22149, Circuit Court of Cook County;

Exhibit D:   Late Notice of Appeal, *People v. Plummer*, No. 1-05-3216;

Exhibit E:   Order, *People v. Plummer*, No. 1-05-3216 (Ill.App. 2005);

Exhibit F:    Motion for Leave to File Late Notice of Appeal, *People v. Plummer*, No. 1-05-3216;

Exhibit G:    Order, *People v. Plummer*, No. 1-05-3216 (Ill.App. 2005);

Exhibit H:    Rule 23 Order, *People v. Plummer*, No. 1-05-3216 (Ill.App. 2007); and

Exhibit I:    Order, *People v. Plummer*, No. 104606 (Ill. 2007).

June 3, 2008                          Respectfully submitted,

                                      LISA MADIGAN
                                      Attorney General of Illinois

                          By:    _____
                                 ERIC W. TRUETT, Bar # 6291213
                                 Assistant Attorney General
                                 100 W. Randolph Street, 12th Floor
                                 Chicago, Illinois 60601-3218
                                 PHONE: (312) 814-4684
                                 FAX: (312) 814-2253
                                 E-MAIL: etruett@atg.state.il.us

**NOTICE**

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIFTH DIVISION
Filed: 03/31/04

No. 1-01-1140 & 1-01-2471 (Cons.)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | 99 CR 22149 |
| CONTRELL PLUMMER and STANLEY THOMAS, | ) | Honorable Leo E. Holt, Judge Presiding. |
| Defendants-Appellants. | ) | |

### O R D E R

The defendants, Contrell Plummer and Stanley Thomas, were charged with three counts of first degree murder and one count of aggravated discharge of a firearm. Following a joint bench trial, they were each found guilty of knowing first degree murder, felony murder and aggravated discharge of a firearm. The convictions for felony murder and aggravated discharge of a firearm merged into the knowing first degree murder convictions. Plummer was sentenced to serve 55 years imprisonment which was later reduced to 40 years imprisonment. Thomas was sentenced to serve 50 years imprisonment which was later reduced to 35 years imprisonment.

On appeal, Plummer argues that his conviction for first

No. 1-01-1140 & 1-01-2471 (Cons.)

degree murder should be reduced to involuntary manslaughter because the State failed to prove beyond a reasonable doubt that death or great bodily harm would result from his conduct.

Thomas argues that he received ineffective assistance of counsel as a result of attorneys from the same firm representing him and his co-defendant.  Thomas maintains that his interests were antagonistic to Plummer's and that the hostility of interests prevented his attorney from independently representing his interests.  Thomas further contends that he received ineffective assistance of counsel due to his defense counsel's failure to argue that he was innocent since he did shoot into the house and did not intend to shoot into the house where the victim was located.

For the reasons that follow, we affirm the decisions of the trial court.

BACKGROUND

The following facts were adduced from the record.  On December 31, 1998, Plummer and co-defendant Thomas and Henry Thomas (Henry) went to a New Year's Eve Party at 9208 South Eggleston Avenue (Eggleston) in Chicago, Illinois.  Mae Shears (Mae) and her daughter, Tiawanda Shears (Tiawanda), who was Thomas' girlfriend, lived at this address and were hosting the party.  The house was a raised ranch style home which had a

2

No. 1-01-1140 & 1-01-2471 (Cons.)

furnished basement.

During the party, Plummer went to the kitchen which was located on the first floor of the house to use the telephone. He was calling his brother's girlfriend. When she did not answer, he tried to call his voice mail to see if she had left him a message. Mae and her brother, Gaylord King, told Plummer not to make any long distance phone calls. Plummer responded that he was not making any long distance calls. Plummer then hung up the telephone and started to walk out the kitchen and towards the basement.

As this was occurring, King told Plummer that he was lying and started to follow Plummer out of the kitchen. A fight ensued between the men which last approximately 10 minutes. After the fight was broken up, approximately 10 of King's friends grabbed Plummer and dragged him down the stairs and into the basement. They then began punching and kicking Plummer for about one to three minutes all over his body and head.

Upon seeing this, Henry pulled out an unloaded gun in an attempt to scare the men and make them leave Plummer alone. This caused the fighting to stop. Plummer was bleeding from his mouth, nose and ear.

Plummer, Thomas and Henry then left the house. The men entered Plummer's car and drove away. During the fight, Mae had

3

No. 1-01-1140 & 1-01-2471 (Cons.)

called the police.  After driving for about 10  minutes, Plummer realized that he had left his jacket at the party and that his wallet, which contained his identification, was in the pocket of the jacket.  The three men then decided to turn around and went back to the house to retrieve Plummer's jacket.  At trial, Plummer testified that this was his only reason for returning to the house.

In the meantime, the police arrived at the house in response to Mae's telephone call.  Mae informed them that the fight had ended and informed the police that it was okay for them to leave. When the three men arrived at the house again, they parked their car in the alley behind the house and walked around to the front of the house where they knocked on the front door.

Plummer testified that he heard someone say, "who is it" and in response he identified himself.  Plummer stated that he did not hear anything from inside after he identified himself.  He then knocked on the door a second time, identified himself again and also stated that he wanted his jacket.  Again, no one responded.  Plummer then walked around to the side of the house and knocked on the side door.  He again identified himself and got no response.

Tiawanda testified that 20 minutes after the police left, she heard someone knocking on the side door.  She then asked "who

4

No. 1-01-1140 & 1-01-2471 (Cons.)

is it" but did not hear a response. She then heard the front
doorbell ringing and went to answer the front door. When she
looked out of the front door, she did not see anyone. She then
look out of the front window and saw Plummer, Thomas and Henry.
She testified that they were holding guns and she could hear them
yelling, "tell them whore ass niggers to come out now."

Tiawanda then yelled at everyone to hit the lights, she
unplugged the Christmas tree and moved away from the front window
and into the basement. She testified that she told her family
that they were back and heard someone walking along the side of
the house. Tiawanda testified that she was talking to her uncle,
King, when a bullet passed right between them. She said that she
heard gunfire for about five to seven minutes. She could not
estimate the number of shots that she heard. Tiawanda stated
that the shots sounded as if they were coming from the back of
the house.

Plummer testified that as he was standing outside someone
turned off the lights inside the house. The three men then went
back to their car. He and Thomas then agreed to shoot their guns
into the air to shake them up. Plummer testified that he shot
his gun six to eight times in the air. After that, he shot his
gun three or four times into the window which was closest to the
house's roof. Plummer explained that it was not his intention to

5

No. 1-01-1140 & 1-01-2471 (Cons.)

shoot anyone at this time.

The following is an excerpt from Thomas' testimony concerning the shooting:

Q. When you shot at the house, did you ever shoot at the basement window?

A. No, I did not.

***

Q. Where did you shoot when you were shooting toward[s] the house?

A. In the air.

Q. When you say the air, did you see the windows of -- the upper windows break when you were shooting?

A. Yes.

Q. Did you know what rooms were in the back of the house as you were shooting up in the air when you were shooting there?

A. I beg your pardon.

Q. What rooms did you think were in the back of this house when you were shooting?

A. Closets.

Q. Did you ever think that there would be anybody inside the back of the house when you

6

No. 1-01-1140 & 1-01-2471 (Cons.)

        shot into the house?

A.    No, I did not.

Q.    Did you ever shoot at Rona Cox when you in

        fact shot into the house?

A.    No, I did not.

On cross-examination, Thomas denied that he ever shot into the house. He testified that he only shot his gun into the air. However, after this testimony, Thomas was impeached with a confession which he made prior to trial. Therein, Thomas admitted to Assistant State's Attorney Pat Gareis in a seven page, signed, handwritten statement that he shot approximately six shots into one window of the house while Plummer shot into another.

When the police arrived at the scene, they found the victim, Rona Cox, on the kitchen floor with a single gunshot wound to the head. An ambulance was summoned and Cox was subsequently taken to Christ Hospital where she died. Additionally, Plummer's coat, which contained his wallet and identification, was also found inside the house.

Tiawanda testified that approximately 10 days later, she saw Thomas on the street at 59th Street and Sangamon Street. At that time, she and Thomas had a discussion concerning the events of the incident. During their conversation, Tiawanda testified that

7

No. 1-01-1140 & 1-01-2471 (Cons.)

Thomas admitted to shooting into the basement window and not the kitchen window.

The defendants' motions for a directed finding regarding the intentional first degree murder counts were granted. The court found that there was insufficient evidence to support a finding of intentional murder because the parties only returned to the house to retrieve Plummer's jacket, not to seek revenge. At the conclusion of trial, the defendants were each found guilty of knowing first degree murder, felony murder and the aggravated discharge of a firearm.

ANALYSIS

I

Plummer argues that his conviction for knowing first degree murder should be reduced to involuntary manslaughter because the State failed to prove beyond a reasonable doubt that he knew that death or great bodily harm would result from his conduct.

In assessing the sufficiency of the evidence to sustain a verdict on appeal, a reviewing court's inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); People v. Cooper, 194 Ill. 2d

8

No. 1-01-1140 & 1-01-2471 (Cons.)

419, 430-31 (2000). Under this standard, a reviewing court will
not substitute its judgment for that of the trier of fact on
issues of the weight of evidence or the credibility of witnesses.
Cooper, 194 Ill. 2d at 431. Indeed, it is the responsibility of
the trier of fact to "fairly *** resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." Jackson, 443
U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

In People v. Mimms, 312 Ill. App. 3d 226 (2000), following a
bench trial, the defendant was convicted of first degree murder
(720 ILCS 5/9-1(a)(2)). The defendant fired a gun into a house
which he knew to be occupied and subsequently shot and killed one
of the residents. On appeal, the defendant maintained that the
trial court erred when it convicted him of first degree murder
instead of involuntary manslaughter. In particular, the
defendant argued that his shooting into an occupied house was an
act of recklessness for which he should have only been convicted
of involuntary manslaughter.

Relying on People v. Lake, 298 Ill. App. 3d 50 (1998), the
Mimms court held that the defendant was presumed to know that his
firing a gun at an occupied home created a strong probability of
death or bodily harm to the occupants of that home, which in that
situation included the victim. The Mimms court concluded that

9

No. 1-01-1140 & 1-01-2471 (Cons.)

the trial court correctly convicted the defendant of first degree murder.  Mimms, 312 Ill. App. 3d at 231.

Plummer, as the defendant in Mimms, was convicted of first degree murder in violation of 720 ILCS 5/9-1(a)(2) which states that:

> "(a) A person who kills an individual without
> lawful justification commits first degree murder if, in
> performing the acts which cause the death:
>
>> (2) he knows that such acts create a strong
>> probability of death or great bodily harm to
>> that individual or another."

Here, as in Mimms and Lake, the defendant fired a gun into a house which he knew to be occupied, and subsequently shot and killed one of the occupants.  As those courts held, Plummer is presumed to know that firing a gun into an occupied residence created a strong probability of death or great bodily harm.  As such, the trial court correctly convicted him of first degree murder.

II

Thomas argues that he was denied his sixth amendment right to effective assistance of counsel because his attorney had a conflict of interest.  Thomas claims that because his attorney and Plummer's attorney were from the same law firm, his attorney

10

No. 1-01-1140 & 1-01-2471 (Cons.)

could not effectively employ the best defense suited for him because it would have been detrimental to Plummer's defense.

Thomas maintains that Plummer's statement to police and testimony at trial showed that he intentionally shot into the house where the victim was located, and thus the only conceivable argument against a first degree murder conviction for him was that his conduct was reckless because he did not know that anyone was in that section of the house when he shot into it.

Thomas contends on the other hand that given his testimony at trial, i.e., that he did not intend to shoot into the house, that his attorney should have advanced the defense that his conduct was reckless because he only intended to shoot above the house although stray bullets did enter the house.  Thomas claims that if this type of defense had been employed he would have only been eligible for an involuntary manslaughter conviction.  Thomas argues that this defense was not employed by his attorney because it would have been antagonistic towards Plummer's defense because it would have inherently implied and emphasized that Plummer was guilty of first degree murder because he intentionally shot into the house.

The State argues that prior to trial Thomas waived his right to conflict-free counsel.  The State maintains that prior to trial the court clearly admonished Thomas of the possibility of a

11

No. 1-01-1140 & 1-01-2471 (Cons.)

conflict and of his right to separate counsel. As such, the
State claims that Thomas agreed to be represented by an attorney
from the same firm as Plummer and thus waived his right to
conflict-free counsel.

In order to waive the right to conflict-free counsel, a
defendant must know of the potential conflict and of its
significance. People v. Taylor, 165 Ill. App. 3d 1016, 1019-20
(1988). There must be a strong showing of an intentional and
knowing waiver. Taylor, 165 Ill. App. 3d at 1020.

"It is well settled that the knowledge of one member of a
law firm is imputed to other members of the firm. (People v.
Karas, 81 Ill. App. 3d 990 (1980).) A conflict of interest for
one member of a firm extends to all members of a firm. (People
v. Free, 112 Ill. 2d 154 (1986); People v. Arreguin, 92 Ill. App.
3d 899 (1981).) In a case where two members of a firm represent
clients with conflicting interests it can only be concluded that
you have a situation where the same attorney is representing both
clients." People v. Dace, 153 Ill. App. 3d 891, 896 (1987).

In this matter, Thomas did not make an intentional and
knowing waiver of his right to conflict-free counsel. Prior to
trial, the trial judge cautioned Thomas and Plummer that by using
their present attorneys a conflict might arise. At the
conclusion of this admonishment, the trial judge made the

12

No. 1-01-1140 & 1-01-2471 (Cons.)

following statement:

> "Gentlemen, your lawyers if they have not
> discussed this issue with you should do so at the
> earliest opportunity and explain to you more fully
> based upon the facts of your case as they understand
> them whether or not there is the possibility of a
> conflict of interest.
>
> On your next court date, I will ask each of you
> whether or not you have had such a conversation with
> your attorney, whether you understand what is meant by
> a conflict of interest, and whether you are then
> satisfied to proceed further with [your present
> attorneys] representing you....  Do you understand?"

It is undisputed that nothing in the record reflects that
the trial judge actually followed up as he promised and further
asked Thomas whether or not he had spoken with his attorney
regarding the issue of a possible conflict and if he consequently
wanted to proceed with his current attorney.  While the trial
judge clearly admonished Thomas and his co-defendant of the
possibility of a conflict and of their right to separate counsel,
the trial judge did not subsequently ensure that a waiver was
knowingly made by Thomas.  Thereafter, the trial judge failed to
follow up on this matter and ask Thomas if he had discussed this

13

No. 1-01-1140 & 1-01-2471 (Cons.)

issue with his attorney and to have Thomas make a knowing waiver.

"The right to effective assistance of counsel as guaranteed by the sixth and fourteenth amendments (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8) includes the right to have the undivided loyalty of counsel, free from any conflict of interest. (Glasser v. United States, 315 U.S. 60, 75-76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467 (1942); People v. Sanchez, 161 Ill. App. 3d 586, 591 (1987); People v. Ross, 138 Ill. App. 3d 1089, 1095-96 (1985).) Therefore, in Illinois we have the per se conflict of interest rule which provides that an accused need not demonstrate prejudice in order to obtain a reversal where it is shown that defense counsel acted under an actual or potential conflict of interest without the accused's knowledgeable consent. Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 1718-19, 64 L. Ed. 2d 333, 347 (1980); People v. Sanchez (1987), 161 Ill. App. 3d 586, 592.

Where defense counsel has professional commitments to others having interests clearly antagonistic to the accused's interests, a per se conflict of interest arises. (People v. Sanchez, 161 Ill. App. 3d 586, 593 (1987); see also People v. Ross, 138 Ill. App. 3d 1089, 1096 (1985).) In addition, a conflict of interest is per se where, by its nature, the conflict subjects counsel to

14

No. 1-01-1140 & 1-01-2471 (Cons.)

subtle pressures adversely affecting his representation of the
accused.  People v. Sanchez, 161 Ill. App. 3d 586, 593 (1987).

     The per se conflict of interest rule does not apply,
however, in cases involving joint representation of codefendants.
(People v. Sanchez, 161 Ill. App. 3d 586, 594 (1987); People v.
Ross, 138 Ill. App. 3d 1089, 1096 (1985).)  Where no per se
conflict exists, a defendant must show the existence of an actual
conflict and actual prejudice.  (People v. Sanchez (1987), 161
Ill. App. 3d 586, 592; People v. Ross, 138 Ill. App. 3d 1089,
1096 (1985).)  When multiple defendants are jointly represented,
it is not presumed that their interests are necessarily hostile,
but where hostility of interests is shown to exist, joint
representation is a denial of effective assistance of counsel and
prejudice is presumed.  People v. Echols, 74 Ill. 2d 319, 326-27
(1978); People v. Ross, 138 Ill. App. 3d 1089, 1096 (1985).

     Hostility of interests is shown to exist when at trial a
defendant's testimony is antagonistic to the interests of his
codefendant. (See People v. Ross, 138 Ill. App. 3d 1089, 1096
(1985); People v. Wilder, 48 Ill. App. 3d 13, 15 (1977).)  When a
codefendant becomes, in effect, a witness against the defendant,
the defendant is constitutionally entitled to confront the
witness.  However, where one attorney represents both the
defendant and codefendant, the codefendant/witness cannot

15

No. 1-01-1140 & 1-01-2471 (Cons.)

adequately be impeached because the codefendant is defense counsel's client. (People v. Ross, 138 Ill. App. 3d 1089, 1097-98 (1985); People v. Cade, 97 Ill. App. 3d 354, 357 (1981), appeal denied, 85 Ill. 2d 568.) Defense counsel is then forced to perform a 'balancing act,' where he cannot fully and vigorously represent one client without hurting the other. (People v. Meng, 54 Ill. App. 3d 357, 364 (1977), appeal denied (1978), 67 Ill. 2d 594.) Thus, the problem which arises in an attorney's joint representation of codefendants with conflicting interests, is in what the attorney must refrain from doing. In re V.W., 112 Ill. App. 3d 587, 591 (1983), citing Holloway v. Arkansas, 435 U.S. 475, 490, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1173, 1182 (1978)." Taylor, 165 Ill. App. 3d at 1020-21. In this case, the per se conflict of interest rule does not apply because the alleged conflict arises from defense counsel joint representation of Thomas and Plummer.

Here, we find that Thomas has failed to show that an actual conflict existed at trial because he cannot show that an actual conflict adversely affected his defense counsel's trial performance and that he in effect was prejudiced by the representation that he received.

Prior to trial, Thomas made a confession wherein he stated that he shot into a window of the house approximately six times.

16

No. 1-01-1140 & 1-01-2471 (Cons.)

It must be noted that Thomas did not claim that he was physically or mentally coerced into voluntarily giving this statement.  He also advised his attorney to not file a motion to suppress this statement.

At trial, Tiawanda testified that after the incident, she had a conversation with Thomas wherein he admitted that he shot into the basement window of the house on the night of the occurrence.  Additionally, at trial, William Thomas, Thomas' brother, testified that on January 2, 1999, Thomas admitted to him that on the night of the incident he and Plummer "went back to the house and shot at the door."  Lastly, there was testimony at trial that a bullet from Thomas' gun was found inside the house.

Taking the sum of this very damaging evidence into consideration, Thomas did not suffer any prejudice from defense counsel's argument that his conduct was reckless because he did know where the people in the house were located.  Although, Thomas testified that he did not intend to shoot into the house, this seems to be the only credible argument that defense counsel could have made.  Nothing in this record indicates that the joint representation prejudiced Thomas in regards to the way that his defense counsel handled his confession or the other inculpatory evidence that was offered against him.

17

No. 1-01-1140 & 1-01-2471 (Cons.)

Defense counsel attempted to mitigate this damaging evidence by calling Thomas to testify.  However, Thomas had confessed to a former friend, a family member and an Assistant State's Attorney that he intentionally shot into the house on the night of the occurrence.  His confession also made it abundantly clear that he knew that the house was occupied at the time of the shooting. Under these set of circumstances, Thomas has failed to show prejudice from the representation that he received from defense counsel at trial.

III

Thomas argues that he received ineffective assistance of counsel because his attorney failed to argue that he was innocent of first degree murder because he did not shoot into the house and never intended to.

The Illinois Supreme Court has repeatedly held that "[t]o demonstrate ineffective assistance of counsel, defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance resulted in prejudice to the defendant." People v. Villarreal, 198 Ill. 2d 209, 228 (2001), citing People v. Williams, 181 Ill. 2d 297, 320 (1998).  "In order to establish an ineffective-assistance-of-counsel claim, a defendant must show that 'there is a reasonable probability that, but for counsel's

18

No. 1-01-1140 & 1-01-2471 (Cons.)

unprofessional errors, the result of the proceeding would have been different.'" People v. Brooks, 334 Ill. App. 3d 722, 725 (2002), quoting Strickland, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. People v. Enis, 194 Ill. 2d 361, 376-77 (2000), citing Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; People v. Evans, 186 Ill. 2d 83, 93 (1999). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. Enis, 194 Ill. 2d at 376-77, citing Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. The failure to satisfy either the deficiency prong or the prejudice prong of the Strickland test precludes a finding of ineffective assistance of counsel. Enis, 194 Ill. 2d at 377, citing Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; Wilson, 191 Ill. 2d at 370.

Here, Thomas cannot satisfy either prong of Strickland. As stated earlier, in this matter, Thomas made three confessions, to a former friend, to his brother and to an Assistant State's Attorney, wherein he stated that he shot into the house on the night of the occurrence. Taking this into consideration, we deem

19

No. 1-01-1140 & 1-01-2471 (Cons.)

it reasonable and sound trial strategy by his defense counsel to not argue that Thomas did not fire his weapon into the house on the night of the occurrence.  Furthermore, even if defense counsel had attempted to make this argument, the evidence against Thomas was overwhelming.  In the face of his confession alone, which he stated on the record was not mentally or physically coerced, Thomas cannot show that but for his attorney's performance there is a reasonable probability that the result of the proceeding, in this bench trial, would have been different.

## CONCLUSION

For the foregoing reasons, the decisions of the trial court are affirmed.

Affirmed.

Reid, J., with Campbell, P.J. and Hartigan, J., concurring.

98378

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

October 6, 2004

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  98378 - People State of Illinois, respondent, v. Contrell
         Plummer et al. (Stanley Thomas, petitioner).
         Leave to appeal, Appellate Court, First District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on October 28, 2004.

EXHIBIT B

NCD
4/24/200_

RECEIVED
MAR 1 5 2005
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

CONTRELL PLUMMER,           )   POST-CONVICTION PETITION
                            )
        Petitioner,         )
                            )
vs.                         )   Case No. 99 CR 22149
                            )
PEOPLE OF THE STATE OF ILLINOIS, )   Honorable
                            )   Leo Holt,
        Respondent.         )   Judge, Presiding.

FILED
MAR 16 2005
DOROTHY BROWN
CLERK OF CIRCUIT COURT

## PRO-SE PETITION FOR POST-CONVICTION RELIEF

NOW COMES Contrell Plummer, petitioner, pro-se, and petitions this Honorable Court to grant him relief under the Post-conviction Hearing Act, 725 ILCS 5/122 et seq., (West 2004). In support of this petition he states as follows:

1. He is currently incarcerated at the Menard Correctional Center, Register No. B14235, P.O. Box 711, Menard, IL., 62259.

2. He was convicted of the offense of murder after a bench trial before the Honorable Leo Holt and was sentenced to 40 years on March 14, 2001, after reconsideration of his sentence.

3. He appealed his conviction to the Appellate Court of Illinois and that court affirmed his conviction on March 3, 2004.

4. A petition for rehearing was denied on May 12, 2004.

5. His Petition For Leave To Appeal was denied on Oct. 6, 2004. S.Ct. # 98675

EXHIBIT C

6. This petition is mailed to the Clerk of the Circuit Court of Cook County without the time frame enumerated under the Post-conviction Hearing Act, 725 ILCS 5/122 et. seq..

7. Petitioner is a poor person and without the means with which to pay for the costs of these proceedings. Petitioner is without counsel and without the funds with which to retain counsel.

8. Petitioner brings these violations of his constitutionsl rights herein alleged under the United States and Illinois Constitutions. Petitioner alleges that his constitutional rights have been violated.

9. Allegations in post-conviction petition should be taken as true and liberally construed. A petition need only to present the gist of a constitutional claim, a low threshold which presents a limited amount of detail. Petitioner asserts that he has met this threshold.

10. Illinois Supreme Court Rule 615(a) permits this Court to review these claims notwithstanding any allegations of waiver which may be alleged.

Therefore, petitioner, Contrell Plummer respectfully requests this Court to grant him relief under the Post-conviction Hearing Act.

Respectfully Submitted,

Contrell Plummer
Register No. B14235
P.O. Box 711
Menard, Il., 62259

2.

C-27

**ORIGINAL**
**FILE COPY**
**DO NOT REMOVE**

Clerk's Office
APPELLATE COURT FIRST DISTRICT
State of Illinois
160 N. LaSalle
Suite 1400
Chicago, IL   60601

FILED

JAN 03 2006

12/20/2005

Honorable Dorothy Brown
Circuit Court of Cook County
Chicago, IL

Re:   People v. Plummer, Contrell
      Appellate Court No: 1-05-3216
      Trial Court No. 99CR22149

Dear Honorable Brown:

    We have been instructed to recall the original mandate issued
to you on 12/19/05, in the above entitled cause.

    Kindly return the mandate to us at your earliest convenience.

                    Very truly yours,

                    Steven M. Ravid
                    Clerk of the Appellate Court
                    First District, Illinois

cc:   All attorneys of record

C-28

Clerk's Office
APPELLATE COURT FIRST DISTRICT
State of Illinois
160 N. LaSalle
Suite 1400
Chicago, IL 60601

FILED
JAN 03 2006

12/20/2005

.ED

Honorable Dorothy Brown
Circuit Court of Cook County
Chicago, IL

Re:   People v. Plummer, Contrell
      Appellate Court No: 1-05-3216
      Trial Court No. 99CR22149

Dear Honorable Brown:

      We have been instructed to recall the original mandate issued
to you on 12/19/05, in the above entitled cause.

      Kindly return the mandate to us at your earliest convenience.


                              Very truly yours,



                              Steven M. Ravid
                              Clerk of the Appellate Court
                              First District, Illinois




cc:   All attorneys of record


C-29

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – CRIMINAL DIVISION

CONTRELL PLUMMER,                    ) POST-CONVICTION PETITION
                                     )
        Petitioner,                  )
                                     )
vs.                                  ) Case No. 99 CR 22149
                                     )
PEOPLE OF THE STATE OF ILLINOIS,     ) Honorable
                                     ) Leo Holt,
        Respondent.                  ) Judge, Presiding.

**RECEIVED** MAR 15 2005 CLERK OF THE CIRCUIT COURT CRIMINAL DIVISION

**FILED** MAR 16 2005 DOROTHY BROWN CLERK OF CIRCUIT COURT

## PRO-SE PETITION FOR POST-CONVICTION RELIEF

NOW COMES Contrell Plummer, petitioner, pro-se, and petitions this Honorable Court to grant him relief under the Post-conviction Hearing Act, 725 ILCS 5/122 et seq., (West 2004). In support of this petition he states as follows:

1. He is currently incarcerated at the Menard Correctional Center, Register No. B14235, P.O. Box 711, Menard, IL., 62259.

2. He was convicted of the offense of murder after a bench trial before the Honorable Leo Holt and was sentenced to 40 years on March 14, 2001, after reconsideration of his sentence.

3. He appealed his conviction to the Appellate Court of Illinois and that court affirmed his conviction on March 3, 2004.

4. A petition for rehearing was denied on May 12, 2004.

5. His Petition For Leave To Appeal was denied on Oct. 6, 2004. S.Ct. # 98675

6. This petition is mailed to the Clerk of the Circuit Court of Cook County without the time frame enumerated under the Post-conviction Hearing Act, 725 ILCS 5/122 et. seq..

7. Petitioner is a poor person and without the means with which to pay for the costs of these proceedings. Petitioner is without counsel and without the funds with which to retain counsel.

8. Petitioner brings these violations of his constitutionsl rights herein alleged under the United States and Illinois Constitutions. Petitioner alleges that his constitutional rights have been violated.

9. Allegations in post-conviction petition should be taken as true and liberally construed. A petition need only to present the gist of a constitutional claim, a low threshold which presents limited amount of detail. Petitioner asserts that he has met his threshold.

10. Illinois Supreme Court Rule 615(a) permits this Court review these claims notwithstanding any allegations of waiver which may be alleged.

Therefore, petitioner, Contrell Plummer respectfully requests Court to grant him relief under the Post-conviction Hearing

Respectfully Submitted,

Contrell Plummer
Register No. B14235
P.O. Box 711
Menard, Il., 62259

2.

C-31

RECEIVED
CLERK OF
MAR 1 E 2005
CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – CRIMINAL DIVISION

| | |
|---|---|
| CONTRELL PLUMMER, | ) POST-CONVICTION PETITION |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. <u>99 CR 22149</u> |
| | ) |
| PEOPLE OF THE STATE OF ILLINOIS, | ) Honorable |
| | ) Leo Holt, |
| Respondent. | ) Judge, Presiding. |

## ARGUMENT IN SUPPORT OF PRO-SE POST-CONVICTION PETITION

> PETITIONER'S STATEMENT WAS INVOLUNTARY
> AND SECURED IN VIOLATION OF DUE PROCESS
> UNDER THE UNITED STATES CONSTITUTION, AMEND-
> MENT V AND XIV AND THE ILLINOIS CONSTITUTION
> OF 1970, ART I, $2, IN THAT IT WAS BASED
> UPON AN UNFULLFILLED PROMISE OF LENIENCY.

Illinois courts have long recognized that offers of

leniency are a factor to be considered in determining whether

a statement is voluntary. Going back to 1922, the Illinois

Supreme Court stated that it was the rule in Illinois that

"a confession becomes incompetent whenever any degree of

influence has been exerted by any person having authority

over the charge against the prisoner or over his person, tend-

ing to cause duress or hope of leniency"...<u>People v. Heide</u>,

302 Ill. 624, 627, 135 N.E. 77, 79, (1922);See also <u>People

v. Jones</u>, 8 Ill.App.3d 849, 291 N.E.2d 305 (1st Dist.1972){

promises of leniency or immunity, either partial or total,

will render statements given in consideration of such promises

not voluntary and not admissible); <u>People v. Ruegger</u>, 32 Ill.

C-32

App.3d 765, 336 N.E.2d 50 (4th Dist.1975)(Offers of leniency are a factor to be considered in determining whether a statement is voluntary); People v. McCue, 48 Ill.App.3d 41, 362 N.E.2d 760 ((2nd Dist.1977); People v. Slaughter, 59 Ill.App.3d 159, 376 N.E.2d 33 (1st Dist.1978)(Where a statement is given in consideration of promises of leniency it is not voluntarily given and is therefore inadmissible).

Even the United States Supreme Court has said, "[A] State-ment must be free and voluntary and must not be extracted by any sort of threat...or obtained by any direct or implied promises however slight, nor by the exertion of any improper influence. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

In the instant case, petitioner and co-defendant, Stanley Thomas, were in custody at the police station and each had spoken to detectives about the circumstances of the crime. According to their attached affidavits the police had given them indications that this shouldn't be charged as a murder. Preliminary conver-sations with A/s/A Patrick Gareis also lead the petitioner and co-defendant Thomas to believe charges of involuntary manslaughter would be brought. Along with William Thomas state-ment A/S/A Garies coerced and influenced petitioner to give and sign statements. Mr. Garies even afforded the co-defendants an opportunity to speak with each other, before given formal state-ments, to confirm that Mr.Garies had represented to each that murder charges would not be brought if both gave a detailed statement of what had happened on New years Eve 1998.

After speaking to each other, both petitioner and co-defendant

2.

C- 27

Thomas, individually and separately, gave a statement to Mr.
Gareis.

Petitioner asserts that without the promise of leniency
made by Mr. Gareis and the other investigating officers, and
the opportunity to confer with his co-defendant to ascertain
Mr. Gareis had represented the same information to him, he
wouldn't have memorialized his statement.

> 720 ILCS 5/9-1(A)(2) VIOLATES THE PROPOR-
> TIONATE PENALTIES CLAUSE OF THE ILLINOIS
> CONSTITUTION OF 1970, ART. I, §§2, 11,
> AND THE EIGHTH AND FOURTEENTH AMENDMENTS
> TO THE UNITED STATES CONSTITUTION WHERE
> 720 ILCS 5/9-1(A)(2), (WHERE A PERSON
> UNINTENTIONALLY KILLS AN INDIVIDUAL),
> IS SUBSTANTIALLY IDENTICAL TO THE
> INVOLUNTARY MANSLAUGHTER STATUTE, 720
> ILCS 5/9-3(A).

Petitioner challenges the constitutionality of the sentence
which followed his conviction for murder under 720 ILCS 5/9-1
(a)(2). Specifically, petitioner contends that first degree
murder, as defined in 720 ILCS 5/9-1(a)(2), is substantially
indistinguishable from involuntary manslaughter as defined in
720 ILCS 5/9-3(a), yet carries a penalty some 10 times greater
than involuntary manslaughter and a maximum sentence much more
severe, with a possible natural life or death penalty attached.

Petitioner contends that all of the elements needed to con-
vict a person of an unintentional killing under §9-1(a)(2) is
emcompassed in the involuntary manslaughter statute at §9-3(a)
and therefore the greater penalty for §9-1(a)(2) clearly vio-
lates the Due Process Clause of the United States Constitution,
VIII and XIV Amendments, as well as the proportionate penalties

3.

C-34

clause of the Illinois Constitution of 1970, Art. I, §§2, 11.

Petitioner begins this analysis with a side-by-side comparison of the pertinent statutes. 720 ILCS 5/9-1(a)(2) states:

> 9-1(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: ***
>
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another...

720 ILCS 9-3(a) states:

> 9-3(a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly...

The basic difference between involuntary manslaughter and murder is the mental state which accompanies the conduct causing the homicide. To sustain a conviction for murder, there must be sufficient evidence by which it is shown that the accused either intended to kill or knew of the strong probability of death or great bodily harm. §9-1(a)(2). Involuntary manslaughter is defined as the killing of a human being by actions which "are likely to cause death or great bodily harm...and [are] perform[ed] recklessly." §9-3(a).

Recklessness, as defined by statute, reads:

> 4-6 A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An

4.

C-35

> act performed recklessly is performed
> wantonly, within the meaning of a statute
> using the latter term, unless the statute
> clearly requires another meaning.
> 720 ILCS 5/4-6.

Therefore, when a person knows that an act creates a strong probability of death or great bodily harm, but consciously disregards that risk, not intending to commit murder or great bodily harm, such an act must be considered "reckless" when an individual is unintentionally killed. Such are the facts in the instant case, the petitioner obviously knew that discharging a weapon could result in death or great bodily harm. However, evidence at trial showed that petitioner and his co-defendant watched as people from the party exited the house. They then returned to the house and after knocking received no answer. They were in an intoxicated state. They did suspect that someone was still inside but refusing to return petitioner's jacket and identification. They then went to the back of the house, where they knew from being at the party that no one was present. They disregarded a substantial risk that circumstances existed that people would be inside. Deviating from a standard of care a reasonable person would employ in the same circumstances, they fired into the house, not intending to kill or do great bodily harm, but only to "shake them up," and expedite the return of petitioner's jacket and identification.

720 ILCS 9-3(a) defines the offense as the Supreme Court has interpreted it: an unjustified killing resulting from either lawful or unlawful acts likely to cause death or great bodily harm and performed with a conscious awareness of risk and

5.

*C-36*

disregard thereof.

Petitioner contends that the only expressed threshold requirement contained in the involuntary manslaughter statute is that the act, either lawful or unlawful, which caused the unintentional death, must be such as are (at least) likely to cause death or great bodily harm. 720 ILCS 5/9-3(a) expresses no ceiling for the unlawful act. If a person unintentionally kills an individual without lawful justification while committing an unlawful act, other than an act committed with the intent to kill, s/he commits involuntary manslaughter if the acts which cause the death are such as are likely to cause death or great bodily harm to some individual. Additionally, it should be noted that acts performed recklessly are performed wantonly, 720 ILCS 5/4-6.

An unlawful act involving the use or threat of physical force or violence against an individual is performed recklessly if it causes an unintentional death, if while committing the unlawful act s/he consciously disregards a substantial and unjustifiable risk of unintentionally killing an individual.

Therefore, a person knows his acts create a strong probability of death or great bodily harm, (§5/9-2(a)(2)), when a person has a direct, conscious awareness from start to finish. Unintentional murder, (§5/9-3(a)), is when a person has no initial anticipation of death or great bodily harm. Section 5/9-2(a)(2) requires direct knowledge from the start while §5/9-3(a) requires indirect knowledge from the start.

Petitioner contends that the clear language of §5/9-3(a)

6.

C-37

suggests no expressed ceiling in regard to unlawful acts which causes an unintentional death. "Where the legislative enactment is clear and unabiguous, a court is not free to deviate from the plain language and meaning of the statute by reading into it limitations or conditions that the legis=.... lature did not set forth, nor is it required that the court search for any subtle or not readily apparent intention of the legislature." People v. Woard, 175 Ill.2d 435, 443, 677 N.E.2d 935 (1997); See also People v. Sheehan, 168 Ill.2d 298, 659 N.E.2d 1339 (1995).

For purposes of proportionate penalties review, the court looks to the two different offenses, determines whether there are identical elements, and then determines whether they are punished differently. People v. Lewis, 175 Ill.2d 412, 677 N.E.2d 830 (1996).

Our Supreme Court has expressly decided that where there are two offenses with identical elements and different penalties, the proportionate penalties clause is violated and the offense with the more serious penalty cannot stand. People v. Christy, 139 Ill.2d 172, 176-177 (1990); People v. Lewis, 175 Ill.2d 412, 418 (1996); People v. Morgan, 203 Ill.2d 470, 479-480 (2003); People v. Walden, 199 Ill.2d 392, 396-397 (2002) and People v. Wisslead, 94 Ill.2d 190, 446 N.E.2d 512 (1983).

This court has the authority to review these offenses under the proportionate penalties clause and should grant relief to Contrell Plummer because in the instant case there are two different offenses, with identical elements, that are punished

7.

C-3B

differently. <u>Lewis</u>, 175 Ill.2d at 418. This situation is a clear violation of the proportionate penalties clause. This court is not deciding this case on a clean slate. There are binding Illinois Supreme Court cases which establish the well-settled principle of law that where there are two offenses with identical elements, but carry different penalties, the prosecutor has no authority to charge the offense with the greater penalty. See <u>Christy</u>, 139 Ill.2d at 176-177; <u>Lewis</u>, 175 Ill.2d at 418; <u>Morgan</u>, 203 Ill.2d at 479-480.

Petitioner asserts that because 720 ILCS 5/9-2(a)(2) and 720 ILCS 9-3(a) are substantially identical offenses which, illogically, are punished with disparate penalties, this court should vacate petitioner's sentence and conviction under §5/9-2(a)(2) and enter sentence under §5/9-3(a), especially where promises were made to petitioner guarenteeing him the 'lesser' charge and penalty.

> PETITIONER'S ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE HE FAILED OR REFUSED TO FILE A MOTION TO SUPRESS PETITION-ER'S STATEMENT, TAKEN INVOLUNTARILY AFTER AN UNFULLFILLED PROMISE OF LENIENCY.

Petitioner incorporates the facts as set forth in his first argument of this brief.

Petitioner's attorney was aware of the fact that promises were made to petitioner and his co-defendant to memorialize their statements. Dispite this fact the attorney did not file any pre-trial motion challenging the admissibility of the state-ment, instead electing to go forward on his belief that the statements given by petitioner and co-defendant Thomas were

8.

C-39

exculpatory, an unreasonable determination under the circum-
stances, and which decision prejudiced the petitioner.

Petitioner can satisfy both prongs of <u>Strickland v. Wash-
ington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
His attorney provided objectively unreasonable performance and
petitioner was prejudiced resulting therefrom.

The attorney failed in his obligation to conduct a reason-
able investigation by failing or refusing to persue inquiry
whether any promises were made to petitioner and by failing to
motion to supress the statement. Petitioner was prejudiced by
counsel's unreasonable decision that the statement was excul-
patory because it was the only direct evidence the petitioner was
involved in this crime. There was no physical evidence that
linked the petitioner to the crime, no gun was ever recovered,
from either defendant, and there were no eyewitnesses. Although
circumstantial evidence may have served to lead the police to
suspect the petitioner was involved, without the statement the
prosecution would never have been able to prove their case beyond
a reasonable doubt.

Thus, under the circumstances, the failure to file a motion
to supress petitioner's statement cannot be considered sound
trail strategy, satisfying the first <u>Strickland</u> prong, 466 U.S.
at 689, 104 S.Ct. at 2065, and there is a reasonable probabil-
ity that, but for counsel's unprofessional error, the result
of the proceeding would have ebeen different. <u>Id</u>., at 694, 104
S.Ct. at 2068.

A "reasonable probability" is one "sufficient to undermine

9.

C-40

confidence in the outcome." Id., at 694, 104 S.Ct. at 2068.
Even if the odds that the defendant would have been acquitted
had he received effective representation appear to be less than
fifty percent, prejudice has been established so long as the
chances of acquittal are better than negligle. Miller v.
Anderson, 255 F.3d 455, 459, (7th Cir.2001).

Petitioner conceeds that he doesn't have an affidavit to
support his claim of ineffectiveness but our Supreme Court has
stated that a supporting affidavit from an attorney ineffective
assistance of counsel is alleged against is improper. People
v. Williams, 47 Ill.2d 1, 264 N.E.2d 697 (1970); See also
People v. Johnson, 183 Ill.2d 176, 700 N.E.2d 996, 1003 (1998)
(lack of an affidavit or other evidence not fatal to postcon-
viction claim if petitioner's allegations are clearly supported
by the record) cert. denied, 526 U.S. 1009, 119 S.Ct. 1150,
143 L.Ed.2d 217 (1999).

(A) The said petitioner, first claims that his fourth
Amendment was violated, wre his Warrantless Arrest was Improper.
The Petitioner, an overnight guest in a residence has a reason-
able expectation of privacy in that residence, and may challenge
his Warrantless Arrest therein. The Cook County (Chicago) Police
Department had no exigent circumstances, which existed to excuse
the obtaining of a warrant.

In the case at bar, the Petitioner was a guest at his brother's
house the morning of August 28, 1999, when member of the Harvey
Police, and Chicago Ploice Department, Area 2 made a unlawful
entry of 15401 S. Clairmont, where Harvey Police remained out-
side and the Chicago Police entered the home, without a Warrant
and Probable Cause or a consent to search or seize Contrell

10.

C - 41

ummer, who was taken into custody and then transported to Area 2,

regards to a investigation. However a warrantless or unannounced

try was unjustified and his 4th Amendment Rights were violated

ere there was a exigent circumstances that existed to excuse

he obtaining of a warrant. See <u>People v. Foskey</u> 136 Ill.2d 66,(1990)

see U.S.C.A. (4).

### (A)(1) <u>Fruits of the Poisoned Tree</u>

The Petitioner in the case at bar, alleges that the unlaw-

ful arrest without Probable Cause, proper consent, or a warrant,

was improper and violated the 4th Amendment and any and all

statements or alleged confession obtained within, should have

been suppressed under the Fruits of the Poisoned tree. (4th

Amendment violation).

### (B) <u>Self-Incrimination</u>

The said Petitioner next claims that the Fifth Amendment

privilege against self-incrimination is applicable to the states,

and if the privilege is properly invoked in state proceeding

federal standards govern.

It is a constitutional right and rule that a jury or trier

of fact is not to hear a confession until the trial judge has

determined that it was freely and voluntarily given. Also it

is a denial of Due Process for a trial judge to deny defendant's

motion to strike a confession without comment or hearing. See

<u>People v. King</u>, 61 Ill. 2d 326 (1975).

In the case at bar, the Petitioner's statement was the fruits

C-42

of the poisoned tree, then taken as a statement turned into a con-
fession to the murder or as a partaker in the shooting death.
Which the statement made was involuntary and was by threats of
violence, and was from the use of "subtle coercion", by the Police,
Assistant State Attorney, and prior inconsistent statements of
other. The trial Judge never had a hearing of determined the state-
ments were freely and voluntarily given (14th Amendment violation).

(B)(1) Inconsistent Statements:

The Petitioner, claims that statement during on investigat-
ion, directly or indirectly, consistent or inconsistent, prior
to trial or not, have a way of violating the Fifth Amendment
against self-incriminations.

In this case, the Fifth Amendment privilege against self-
incrimination was violated when the defendant Mr. Plummer was
entrapped by his longtime friend,... where alleged C/o defendant
Stanley Thomas had already told the police that he, Contrell and
Henry, went to the party and then told Police that after the fight
Contrell drove him and Henry to the EL station and that's probably
when he went back. (statement)

However Stanley Thomas was told and shown the statement by
his brother William Thomas, which was the first statement, given
in the investigation, this statement was based and birthed on
a "lie" and hearsay. This was the statement used into "subtle
coercion", then the Police arrested Mr. Plummer illegally and
without a warrant, which became the fruits of an illegally arrest.
And all statements are directly or indirectly incriminating in
violation of the Fifth Amendment and should have been suppressed
and determined that they were freely and voluntarily. (5th and
4th Amendment Violation).

12
C-43

footnote: Petitioner and Co-defendant's written statements are unfreely and involunarily given - where both statements are used as evidence, However never refer to Henry Thomas being at the party or the shooting.

footnote: All statements made in this case are all inconsistent. Including the statement used at trial. Review statement closely.

(C) <u>Unfulfilled Promise</u> :

The said Petitioner's statement was involuntary and secured in violation of 5th and 14th Amendment, in that it was based upon an unfulfilled promse of leniency.

The promise was made by A/S/A Patrick Gareis at the time petitioner's statement was taken. Mr. Gareis allowed Petitioner to speak with c/o defendant Stanley Thomas, before both gave a formalized written statement, and Mr. Gareis promised both Petition-er and Stanley Thomas that he would persue charges of involuntary manslaughter and not murder, [if] Petitioner and Mr. Thomas memorial-ized their statements. The Prosecution did not fulill his promised. (5th and 14th Amendment Violation)

(D) <u>Invalid Indictment</u>:

The said Petitioner, claim that the indictment, under (GJ #65) was paneled not once, but twice, which was mislead and unlawful were the first panel was a John Doe investigation, not to indict but to obtain the names of the defendant's. Then re-paneled again (2 weeks later) to indict two of the (3) alleged defendant's, where the indictment is valid on its face may not be challenged on the ground that the Grand Jury acted on the basis of inadequate

13

C-44

or incompetent evidence or relied on information obtained in violat-
ion of a defendant's 5th Amendment privilege against self-incriminat-
ion. U.S. v Calancra, 414 U.S. 338 (1974): U.S. v Blue, 384 U.S.
251 (1966).

However, the indictment was base on perjury and out-of-court
testimony by detective McViker, which the indictment must be held
invalid and void.

### (D)(1) The Confrontation Clause:

The said Petitioner, claims that his confrontation clause
was violated where Det. McVicker, testified before the Grand Jury
and failed to testify at trial, where out-of-court statements
by witnesses that are testimonial are bared, under the confrontation
clause, unless witnesses are unavailable and defendants had prior
opportunity to cross-examine witnesses, regardless of whether
such statements are deemed reliable by court; where testimonial
at a minimum prior testimony at preliminary hearing, before a
Grand Jury, or at a former trial, and statement elicited during
Police interrogations.

Wherefore, at the Grand Jury the state first presented a
John Doe investigation, then re-paneled the Grand Jury with
the out-of-court testimony of Det. McVicker which violated the
6th Amendment Confrontation Clause where his testimony was never
given the opportunity of cross-examination.

### (E) Ineffective assistance of trial counsel:

The said Petitioner, that trial counsel was ineffective for

14

C-45

any reasons where counsel failed to;

(1) Separate the trial, from the c/o defendant were the c/o
defendant give incriminating statements that the defendent
Mr. Plummer, may have done the crime alone, and

(2) Trial counsel failed to inform the defendant of the
state's plea offer, and

(3) Trial counsel failed to object - where the trial Judge
did not Admonish the defendant's individually of the possi-
bility of a conflict and their right to separate counsel.
The trial Judge failed to follow up on the matter, and

(4) Trial counsel failed to file a motion to Suppression the
Statement, even after the defendant informed counsel that
he wanted to recant his statement, and

(5) Trial counsel failed to call known witnesses to support
the warrantless arrest by Police, and

(6) Trial counsel failed to challeng the fact that a promise
was made to petitioner and co-defendant to memorialize
their statement, inexchange for charges of involunary
manslaughter.

The Appointed counsel, for Mr. Plummer, provided objectively
unreasonable performance and Petitioner was prejudiced result-
ing there from.

The Attorney failed in his obligation to conduct a reason-
able investigation by failing or refusing to persue inquiry
whether any promises were made to petitioner and by failing to
Motion to supress the statement.

15

footnote: The petitioner's post-conviction petition is a separate
petition to c/o defendant <u>Stanley Thomas</u>.

C-46

There was no physical evidence that linked the Petitioner to the crime, no gun was ever recovered from either defendant, and there were no eyewitnesses. Although circumstantial evidence and hearsay statements, may have served to lead the police to suspect the Petitioner was involved, without the statement the prosecution would never have been able to prove their case beyond a reasonble doubt.

The Petitioner can satisfy both prongs of <u>Strickland v Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984). And Under the circumstances, the failure to file a Motion to suppress petitioner's statement cannot be considered sound trial strategy, and there is a reasonble probability that, for counsel unprofessional error, the result of the proceeding would have been different. (6th Amendment Violation)

(E)(1) <u>Appellate Counsel's ineffectiveness:</u>

The Petitioned, also claims that were the trial counsel failure's were unrecorded by the Appellate counsel on the Direct Appeal raised to the level of ineffective assistance of Appellate counsel. Where Appellate counsel failed to:

(1) Challenge the trial counsel's alleged trial strategy, which was [no] strategy at all, and

(2) Appellate counsel failed to raise all issues viable to the defendant issue and no his c o-defendant, where sentencing are Improper Disparity. And

(3) Appellate counsel failed to raise the issue of a separate trial, were

16

P-47

co-defendant made incriminating statement

against Petitioner.

The Appellate counsel, only raise two issues on Appeal, which was a Reasonable Doubt claim and (2) sentencing to meet the requirement of the sentencing statute for involuntary manslaughter. Appellate counsel claim raises the level of a 6th Amendment violation: Under <u>Strickland</u> v <u>Washington</u>, and <u>U.S. v Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039 (1984)(6th Amendment Violation).

(F) <u>Proof beyond a Reasonable Doubt</u>:

The Petitioner next claims that a conviction may not be based upon a confession alone. Instead, inorder for a conviction based upon a confession to be sustained, the confession must be corroborated. This "corroboration requirement is satified by proof of the <u>Corpus Delicti</u>". To establish the corpus delicti; there must be some evidence, independent of the confession, demonstrating that a crime occurred;

Once such a showing is made, the same independent evidence may be considered along with the confession in determining whether the state proved beyond a reasonable doubt that a crime was committed and that the accused committed it. see <u>People v Lambert</u>, 104 Ill.2d 375, 479 N.E.2d 427 (1984): also see <u>people v Willingham</u>, 89 Ill.2d 352, 432 N.E.2d 84 (1982).

In this case, there was <u>independent evidence</u> to be considered along with the confession, unless the state refer to co-defendant's statement as corroborating independent evidence... or the knowing use of perjuried testimony by Tiwanda.

17

C-48

which is not independent evidence, the accused committed the crime.
The Petitioner refers to People v Peterson & Castile, 273 Ill.
App.3d 412, 652 N.E.2d 1252 (1995), where in a joint bench trial,
the co-defendant, were convicted of Aggravated discharge of
a firearm, Aggravated Batter with a firearm, armed violence
and aggravated battery of a senior citizen. The trial court
found that the defendants were equally responsible for the by
stander's injury because each had performed conscious, deliberate
acts that caused injury.

The Appellate court agreed and reversed each defendants con-
viction for aggravated battery with a firearm. The court concluded
that because the identity of the defendant who fired the shot
could not be determined, the elements of the offense could not
be proven against either defendant. The court rejected the states
argument... and The court held, that such "reasoning overlooks
the states burden to prove each element of the offense beyond
a reasonable doubt". 14th Amendment violation. (Due Process and
Equal Protection within the Law).

The confession only may not base a conviction, without in-
dependent evidence to corroborate it. Where the co-defendant was
impeached with a confession which he made prior to trial on cross-
examination were Thomas denied that he ever shot into the house.
The statements that where admitted into evidence, did not independent-
ly corroborate the testimony at trial. The court must agree with
the Appellate Court in Peterson & Castile, that because the idenitiy
of the defendant who fired the shot could not be determined, the
elements of the offense could not be proven against either defendant.

18

C-49

therefore the felony murder conviction must be set-aside.

(G) Inconsistent Verdict:

The Petitioner claims next that his Due Process and Equal Pro-
ecttion was violated were the defendants motioned the court
for a directed finding regarding the intentional first degree
murder counts, which was granted.

First, the defendants were charged: with;

"First-Degree Murder", in that they without lawful
justification intentionally or knowing shot and kill-
ed Rona Cox with a hand gun, in violation of 720 ILCS
5/9-1(A)(1).

Second: First-Degree Murder, in that they, without law-
ful justification shot and killed Rona Cox with a hand-
gun knowing that such shooting with a handgun created
a strong probability of death or great bodily harm to
Rona Cox, in violation of 720 ILCS 5/9-1(A)(2).

Third: First-Degree Murder, in that, they without law-
ful justification while committing a Forcible Felony,
to wit: Aggravated Discharge of a Firearm, shot and killed
Rona Cox with a gun, in violation of 720 ILCS 5/9-1
(A)(3).

Then the Fourth; Aggravated Discharge of a Firearm

In that, they knowingly discharge a firearm into a
building that they knew to be occupied Rona Cox and
the firearm was discharged from a place or position
out side said building in violation, 720 ILCS 24-1.2-
A(1)

The Petitioner's filed for a directed finding regarding the

19

C-50

tentional first-degree murder counts which were granted. Under
Illinois law, logically inconsistent verdicts may stand, while
legally inconsistent verdicts may not stand.

The law in Illinois recognizes only one offense of murder,
thus, there is no requirement that a defendant be charged specifi-
cally under the section 9-1(A)(3) in order to be convicted under
the felony murder theory. People v Maxwell, 148 Ill.2d 116,
92 N.E.2d 960 (1992). (A person cannot be guilty of both murder
and felony murder of same individual when that individual is
killed by firing of gun by accused in performance of robbery.
Subsecion 720 ILCS 5/9-1(A)(2).

However, The legally inconsistent verdict has been up held
and overturned and reaffirmed again. See U.S v Powell, 469 U.S.
_, (1984) also see People v Frias, 99 Ill.2d 193, 457 N.E.2d 1233
(1983).

Then raised to a level of Double Jeopardy. The claims that
in People v Allen, 56 Ill.2d 536, 309 N.E2d 544(1974), the Supreme
Court explained that there was only one crime of murder, and
that each of the sub-paragraphs under siction 9-1(A) describes
the mental state or the conduct of the defendant which must
accompany the acts which cause the death.

Now in the case at bar, the defendants motions for a direct-
ed finding regarding the intentional first degree murder counts,
which was granted by the court... And the court holding:

> "that there was insufficient evidence to support a
> finding of intentional murder because the parties

20

C-51

only returned to the house to retreive Plummer's jacket, not to seek revenge".

They were acquitted of that offense. (see F-21 thur. 22). The court however, found that"they are guilty of count two"; a _knowing_ _murder_, and they are also found guilty of the offense of felony murder predicated upon their guilt of the offense of aggravated discharge of a firearm at the time of the shooting of Miss Cox. See (F-21)

Then the trial Judge went on to say; "The defendants are entitled to know at the time of the indictment what it is that they are going to be facing; and to suggest that the aggravated dis-charge of a firearm which the state chose to support their theory of murder also is an independent act, particularly when the state was not requesting nor would the court do it, _vacate_ the felony murder finding.

That is what the state wanted to use the aggravated discharge of a firearm for, that was its purpose. That was accomplished, it was accomplished correctly and it merged into the offense because it was a lesser included offense"."The court want on to state;

> "of course, it obviously merged into the
> felony murder which also merged into the
> knowing murder". (see F-22)

The Supreme Court, in _Morgan_, 197 Ill.2d 404 (2001), agreed with the Appellate Court that where the acts constituting forcible felonies arise from and are inherent in the [act] of murder, itself, those acts cannot serve as predicate felonies for a charge of felony murder.

21

C-52

The predicate [felony] in this case arose from are inherent in the murder of <u>Rona Cox</u>, the trier of fact should not have been instructed that defendants could be convicted of first degree murder on a felony-murder theory. Therefore, the trial court erred in his determination that there was insufficient evidence to support a finding of intentional murder, then where the acts constituting forcible felonies arise from and are inherent in the act of murder <u>itself</u>, <u>those</u> acts cannot serve, as predicate felonies for a charge of felony murder, where the court from the record, concluded that the "forcible felony arise from and are inherent" in the act of murder <u>itself</u> by obviously merging into the felony murder which also merged into the knowing murder.

The trial Judge in this bench trial, had concluded that the evidence was insufficient to prove intentional murder, then held the forcible felony are from and are inherent in the act of <u>murder itself</u>, which the Judge aquilted of that offense (intentional or knowingly) however, still finds guilty of first-degree murder and felony murder 720 ILCS 5/9-1(A)(2) and 9-1(A)(3), which the verdict legally becomes inconsistent and must be vacate completely. (14th & 5th Amendment violation). See transcripts: pages 69-74-75-98-79-84-86. Also see (F-21-22)

### (H) <u>Disparity in Sentences</u>

The Petitioner finally claims that the sentencing Judge committed a grave miscarriage of Justice in his sentencing <u>phase</u>, where the Judge violated the Due Process and Equal Protection Clause, and failed to properly inact the day-for-day of the sentence, where the  truth-and-sentencing statute was held unconstitutional and later enacted in early 1999.

22

e first prong of the two prong sentencing <u>Disparity</u>, and unconsti-
tion sentencing scheme.

### (I) Improper Disparity

The Petitioner was entitled to an evidentiary hearing on his
st-Conviction claim that his sentence was unconstitutionally
spart to the sentence of co-defendant imposed. In People v Caballero,
9 Ill.2d 205 (1997) the court rejected the argument that disparity
n sentencing is not a constitutional issue.

However, where the Appellate Attorney fails to address the issue
a Improper Disparity in sentences the Attorney becomes ineffect-
e and violates the Sixth Amendment  - and a evidentiary hearing
required where a viable issue was not raise on Direct Appeal
ich relief could have been granted.

The Petitioner then, turns to <u>People v Jackson</u>, 145 Ill.App.3d
6, (1986) where the defendant was convicted of murder armed robbery
d conspiracy, and received an extended term of 80 year for mur-
r with a concurrent 30 years for Armed Robbery and received a
year-sentence.

The Appellate court held that the defendant's 80 year's was
ossly Disparate with the 30 years imposed on his co-defendant. De-
ndant's sentence for murder was reduced from 80 years to 30 years.

---

otnote: a prose Petitioner seeking Post-Conviction relief would not be expect to
struct legal arguments, cite legal authority, or draft a petition as artful as
uld counsel...However, must still plead sufficient facts of the deprivation of a
stitutional right, <u>People v Lemons</u>, 613 N.E.2d 1234 (1993).

---

23

ρ-5⊬

In this case the Petitioner was sentenced to serve 55 years imprisonment which was later reduced to 40 years imprisonment. and his co-dendant,(Thomas), was sentenced to serve 50 years imprisonment which was later reduced to 35 years imprisonment.

As cited in <u>People v Cook</u>, 112 Ill.App.3d 621 (1983), the appellat Court held that defendant's sentence was improperly disparate with the sentences received by his co-defendants.

The record shows that defendant's participation in the escape was no greater than that of his co-defendants. as in this case, there's no showing in the record to determine that one's participation was greater than the other. Therefore, the sentence must be reduce to 35 years.

(2) <u>Improper Truth-and-Sentencing Application:</u>

The second part of the sentencing claim, is that the Supreme Court held that P.A. 89-428, which contained both Amendments to the sentencing and CriminalCodes and non-criminal provisions, was passed in violation of the "single subject" requirement of the Illinois Constitution. See <u>Johnson v Edgar</u>, 178 Ill.2d 99, (1999). However the P.A.89-428, was re-enacted but, "Not at the that this alleged crime was committed. Therefore the Judge must reduce the Mittimus to day-for-day.

8)    The said Petitioner, is without funds, to help defray the cost of the proceedings and respectfully request he be allowed to proceed, <u>In Forma Puaperis.</u>

9)    The said Petitioner, also claims that the Illinois Legislature has provided by statute for the appointment of counsel

24

A-55

indigent defendant who file (pro se) Post-Petitions, wherefore
Petitioner is indigent and respectfully request counsel be Appoint-
ed.

10)     The said Petitioner, files this Post-conviction proceed-
ing for the purpose, to inquire into constitutional issues which
have not been adjudiced, and respectfully request the court:

> (A)  Determine a gist of meritorious con-
> stitutional claim: and

> (B)  Appoint counsel to represent the pro se,
> Post-Conviction petition for relief: and

> (C)  Grant a evidentiary hearing, and modify
> and reduce sentence.

11)     The said Petitoner, also perserve the right to supple-
ment Amend his (Pro Se) Petition within the 90 days, reviewed
by trial court.

Therefore, the Petitioner has raised a state and Federal constitut-
ional violation to were relief can be granted and any other
relief deemed appropriate by this honorable court.

Respectfully submitted,

*Contrell Plummer*

Contrell Plummer
Register No. B14235
P.O. Box 711
Menard, Il., 62259
Pro-se

P-51

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF RANDOLPH )

## VERIFICATION / CERTIFICATION

I, Contrell Plummer, being first sworn upon oath, depose and state:

1. I am the petitioner in the attached Pro-se Petition for Post-conviction Relief;

2. I have read the petition and have knowledge of its contents, and;

3. All of the statements contained in the petition are true and correct to the best of my belief and recollection. FURTHER AFFIANT SAYS NAUGHT.

Contrell Plummer

SUBSCRIBED and SWORN to before me

this 9 day of March , 2005.

NOTARY PUBLIC

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

4.

C-57

IN THE CIRCUIT COURT FOR THE __Cook County__ JUDICIAL COURT
__COOK__ COUNTY, ILLINOIS

CONTRELL PLUMMER
    Petitioner         )

                   )     No. __99 CR 22149__

PEOPLE OF THE STATE OF     )
    Respondent   ILLINOIS,

### APPLICATION TO SUE OR DEFEND AS A POOR PERSON

...ant, __Contrell Plummer__, respectfully requests the Court, pursuant to 735 ILCS 5/5-
...and Rule 298 of the Supreme Court, to grant (him/her) leave to (sue/defend) as a poor person; in
...t applicant states that the following facts are true in substance and in fact:

1.     I am the (Petitioner/Respondent) in the above captioned legal proceedings.
2.     I am a poor person and unable to (prosecute/defend) this action and am unable to pay the
fees, and expenses of this action.
3.     My occupation or means of subsistence:
    (a)    I am not currently employed due to my imprisonment at __Menard__
...tional Center, but I receive (a state stipend/reimbursement) of $__10.00__ per month.
    (b)    The amount and source of all other income or support are:
        NONE

4.     My total income for the preceding year was $__120.00__
5.     The sources and amount of income expected by me hereafter are:
        NONE
6.     The nature and current value of any property, real or personal, owned by me:
    (a).    Real Estate: __NONE__
        Value: _____
    (b)    Motor Vehicle: __NONE__
        Value: _____
    (c)    Cash, savings, checking, etc.: __NONE__
        Value: _____
    (d)    Prison Trust Account: __$0.00__
        Value: _____
    (e)    Other (eg., TV, etc.): __TV, Fan__
        Value: __$200.00__
7.     No applications for leave to sue or defend as a poor person were filed by me or on my
...during the preceding year, except as follows:
        NONE

8.     I believe in good faith that I have a meritorious (claim/defense).

_(signature)_
(Your signature)
Type or print name __Contrell Plummer__
Register Number __B14235__
    __Menard__    Correctional Center
Box __711__
    __Menard__, Illinois __62259__
(Petitioner/Respondent), Pro Se

A-56

IN THE
## CIRCUIT COURT OF COOK COUNTY

CONTRELL PLUMMER )
Plaintiff, Petitioner, )
)  Case No.  99 CR 22149
v. )
)
PEOPLE OF THE STATE OF ILLINOIS )
Defendant  Respondent. )

## PROOF/CERTIFICATE OF SERVICE

TO: Circuit Court Clerk          TO: State's Attorney
2650 S. California Ave.          2650 S. California Ave.

Chicago, Il., 60608             Chicago, Il., 60608

PLEASE TAKE NOTICE that on  March 9 , 20 05 I have placed the
documents listed below in the institutional mail at  Menard  Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service:  Pro-se Post-Conviction Petition and supporting
documents

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: March 9, 2005          /s/ Contrell Plummer
NAME:  Contrell Plummer
IDOC#: B14235
Menard Correctional Center
P.O. BOX  711
Menard , IL 62259

TO THE APPELLATE COURT OF ILLINOIS

05-3216

(Appellate Court Number)

PEOPLE OF THE STATE OF ILLINOIS    )
                                    )
                        vs.         ) (INDICTMENT NO.) 99 CR 22149
                                    ) (Judge)
Contrell Plummer                    ) Joseph G. KAZMIERSKI, JR.

### LATE NOTICE OF APPEAL

An appeal is taken from the order or judgment described below::

(1)  APPELLANT'S NAME: Contrell Plummer

(2)  APPELLANT'S ADDRESS: P.O. Box 711, Menard, IL 62259

(3)  APPELLANT'S ATTORNEY: PRO SE
     ADDRESS: P.O. Box 711, Menard, IL 62259

(4)  OFFENSE: Murder/Strong Prob kill /720-5/9-1 (A)(2)

(5)  JUDGMENT: Finding of Guilt PLEA/FINDING/VERDICT

(6)  DATE OF JUDGMENT OF SENTENCE: 03 / 14 / 01

(7)  SENTENCE: 40 years 100%

(8)  STATE WHY YOU BELIEVE YOUR APPEAL HAS MERIT: The District
     Appellate Court Clerk failed to notify me
     of my Post-Conviction being denied.

(9)  STATE WHY YOUR FAILURE TO FILE A NOTICE OF APPEAL
     WITHIN 30 DAYS WAS NOT DUE TO YOUR CULPABLE
     NEGLIGENCE: District Appellate Court Clerk
     did not inform me within 30 days

WHEREFORE, appellant prays the Court to grant the late notice of
appeal, pursuant to Supreme Court Rule 606(c).

APPELLANT

RECEIVED
CRIMINAL APPEALS

OCT 1 ▲ 2005

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

9/23/05
9/28
9/12

EXHIBIT D

STATE OF ILLINOIS )
)
COUNTY OF _Randolph_ )

## AFFIDAVIT

_Cantrell Plummer_ being first duly sworn on oath deposes and says:

1. I am the Defendant in this cause. Indictment No. _99 CR 22149_

2. I was convicted of _Murder_ on the date of _12-8-00_ and was sentenced to _40 years_ on the date of _3-14-01_ by Judge _LEO E. HOLT_.

3. (State reasons that you did not file a notice of appeal in this case within 30 days of sentencing.) _District Appellate Court Clerk failed did not inform me within 30 days._

4. The delay in filing a notice of appeal is not attributable to defendant/ appellant's culpable negligence.

5. (State why you believe your appeal has merit.) _The District Appellate Court Clerk failed to notify me of my Post-Conviction being denied._

6. Defendant/appellant does declare and affirm that all facts stated in the attached motion and in this affidavit are true and accurate to the best of his knowledge and belief.

SIGNED: _Cantrell Plummer_
DEFENDANT

SUBSCRIBED AND SWORN TO
before me this _23_ day of
_Sept_ . 200_5_.

_Patricia Luers_
NOTARY PUBLIC

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2008

## IN THE APPELLATE COURT OF ILLINOIS

_first_____ DISTRICT

PEOPLE OF THE STATE OF ILLINOIS )
Respondent, )
)
) Case No. _99 CR 22149_
)
                    v. )
)
_Contrell Plummer_____ )
Defendant/Appellant

## NOTICE OF FILING/PROOF OF SERVICE

TO: _Appellate Court and States Attorney_

    Please take notice on _9-23-05_____, I place in the mail the attached.

_Contrell Plummer_____
                         Signature



**ORDER**

## IN THE APPELLATE COURT, STATE OF ILLINOIS
### FIRST DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,       )
    Plaintiff-Appellee,                )   No. 05-3214
                                       )
        v.                     )   Circuit Court No. 99CR22149
                                       )
CONTRELL PLUMMER,                      )   Hon. Joseph G. Kazmierski, Jr.,
    Defendant-Appellant.               )   Judge Presiding
                                       )

### ORDER

ON MOTION OF APPELLANT PRO SE, FOR LEAVE TO FILE A MOTION FOR LATE
NOTICE OF APPEAL AND APPOINTMENT OF COUNSEL (Appeal from Order of 4/22/05);

**IT IS HEREBY ORDERED** THAT THE MOTION FOR LEAVE TO FILE LATE NOTICE

OF APPEAL IS ~~**GRANTED**~~, and the _Denied_ _____

_____ is appointed as counsel.

**THE CLERK OF THE APPELLATE COURT IS DIRECTED TO TRANSMIT THE
NOTICE OF APPEAL TO THE CLERK OF THE CIRCUIT COURT.**

_____ **DENIED**.

Name   Contrell Plummer          **ORDER ENTERED**
    B14235                                                    _____
Address                          NOV - 1 2005                 Justice
    SU820                                                     _____
    P.O. Box 711   APPELLATE COURT, FIRST DISTRICT       Justice
    Menard, IL 62259                                          _____
                                                              Justice

_____

STEVEN M. RAVID, CLERK OF THE APPELLATE COURT, FIRST DISTRICT

RECEIVED
CRIMINAL APPEALS
NOV - 1 2005
309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

EXHIBIT E

TO THE APPELLATE COURT OF ILLINOIS

**FILED**
APPELLATE COURT 1st DIST.

OCT 1 2 2005

STEVEN M. RAVID
CLERK

05 - 3216
(Appellate Court Number)

PEOPLE OF THE STATE OF ILLINOIS )
)
vs. ) (INDICTMENT NO.) 99 CR 22149
)
Contrell Plummer ) (Judge)
) Joseph G. KAZMIERSKI, JR.

Motion for Leave to File
LATE NOTICE OF APPEAL

**FILED**
APPELLATE COURT 1st DIST.

An appeal is taken from the order or judgment described below::  OCT 1 2 2005

(1)   APPELLANT'S NAME: Contrell Plummer  STEVEN M. RAVID
                                                        CLERK
(2)   APPELLANT'S ADDRESS: P.O. Box 711, Menard, IL 62259

(3)   APPELLANT'S ATTORNEY: PRO SE
      ADDRESS: P.O. Box 711, Menard, IL 62259

(4)   OFFENSE: Murder/Strong Prob kill /720-5/9-1 (A)(2)

(5)   JUDGMENT: Finding of Guilt PLEA/FINDING/VERDICT

(6)   DATE OF JUDGMENT OF SENTENCE: 03/14/01

(7)   SENTENCE: 40 Years 100%

(8)   STATE WHY YOU BELIEVE YOUR APPEAL HAS MERIT: The District
      Appellate Court Clerk failed to notify me
      of my Post-Conviction being denied.

(9)   STATE WHY YOUR FAILURE TO FILE A NOTICE OF APPEAL
      WITHIN 30 DAYS WAS NOT DUE TO YOUR CULPABLE
      NEGLIGENCE: District Appellate Court Clerk
      did not inform me within 30 days

WHEREFORE, appellant prays the Court to grant the late notice of
appeal, pursuant to Supreme Court Rule 606(c).

Contrell Plummer
APPELLANT

EXHIBIT F



ORDER

## IN THE APPELLATE COURT, STATE OF ILLINOIS
### FIRST DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,           )
    Plaintiff-Appellee,                          )
                                   )
                                   )
          V.                                              )   NO.  05-3216
                                   )
CONTRELL PLUMMER,                            )
    Defendant-Appellant.                         )

*ORDER ENTERED*
*DEC 16 2005*
*APPELLATE COURT, FIRST DISTRICT*

### ORDER

This cause coming to be heard on Defendant-Appellant's pro se "Motion for Leave to Refile Late Notice of Appeal;" the Court, on November 1, 2005, having denied Defendant-Appellant's pro se motion for leave to file a late notice of appeal;

**IT IS ORDERED** that the Defendant-Appellant's pro se "Motion for Leave to Refile Late Notice of Appeal" is ~~DENIED FOR LACK OF JURISDICTION.~~

*ALLOWED*

*The STATE Appellate Defender is appointed to represent Defendant on appeal.*

|  |  |
|---|---|
| **Name**   Contrell Plummer | *Michael J. Gallagher* |
|         B14235 | Justice |
| **Attorney for** |  |
|  | Justice |
| **Address**   P.O. Box 711 |  |
|           Menard, IL 62259 | Justice |
| **Telephone** |  |

*RECEIVED*
*CRIMINAL APPEALS*

STEVEN M. RAVID, CLERK OF THE APPELLATE COURT, FIRST DISTRICT 2005

*309 RICHARD J. DALEY CENTER*
*RICHARD A. DEVINE*
*STATE'S ATTORNEY'S OFFICE*



**EXHIBIT G**

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIRST DIVISION
May 30, 2006

No. 1-05-2204

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| v. | ) | No. 99 CR 22149 |
| STANLEY THOMAS, | ) | Honorable Wilbur E. Crooks, |
| Defendant-Appellant. | ) | Judge Presiding. |

ORDER

Defendant appeals from the summary dismissal of his pro se petition for relief under the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 et seq. (West 2004). He is currently serving a 35-year term of imprisonment on his bench conviction of first degree murder. That judgment was affirmed on direct appeal. People v. Thomas and Plummer, Nos. 1-01-1140, 1-01-2471 cons. (2004)(unpublished order under Supreme Court Rule 23).

On March 22, 2005, defendant filed a pro se post-conviction petition alleging that the statement he made to the prosecutor was involuntary and secured in violation of his right to due process because it was based on an unfulfilled promise of leniency, He also alleged that he was denied his right to effective assistance of trial counsel, and that his sentence for murder violates the proportionate penalties clause of the

EXHIBIT H

1-05-2204

Illinois Constitution (Ill. Const. 1970, art I, §§2 11).  In
support of his petition, defendant attached his own affidavit and
that of his codefendant, Contrell Plummer.  The circuit court
examined defendant's petition, concluded that the issues raised
therein were frivolous and patently without merit, and dismissed
it at the first stage of proceedings.  725 ILCS 5/122-2.1(a)(2)
(West 2004).

Defendant appealed and the State Appellate Defender was
appointed to represent him.  Counsel has now filed a motion in
this court requesting leave to withdraw based on her conclusion
that an appeal in this cause would be frivolous.  The motion was
made pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed.
2d 539, 107 S. Ct. 1990 (1987), and is supported by a memorandum.

Defendant has filed a pro se response opposing counsel's
request and objecting to her assessment of his claims.  He
maintains that his allegations and supporting affidavits warrant
stage two proceedings and an evidentiary hearing.

In accordance with the mandate of Pennsylvania v. Finley, we
have carefully examined the record in this case, the materials
filed by counsel and defendant's pro se response, and have found
no issues of arguable merit to be asserted on appeal.  We
therefore grant the motion of the State Appellate Defender for
leave to withdraw as counsel and affirm the order of the circuit
court of Cook County.

Affirmed.

GORDON, J., with CAHILL, P.J. and McBRIDE, J., concurring.

2

104606

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

September 26, 2007


Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 104606 - People State of Illinois, respondent, v. Contrell
Plummer, petitioner. Leave to appeal, Appellate
Court, First District.


The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on November 1, 2007.

EXHIBIT I